Argued September 14, affirmed October 12, petition for
rehearing denied November 9, 1966

IN THE MATTER OF THE ESTATE OF
HERMINE ALBERS, DECEASED
ALBERS ET AL *v.* HERBRING ET AL
419 P. 2d 3

*John H. Buttler,* Portland, argued the cause for appellants. With him on the briefs were Cake, Jaureguy, Hardy, Buttler & McEwen, Portland.

*Frank L. Whitaker,* Portland, argued the cause and filed a brief for respondents.

Before MCALLISTER, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

SLOAN, J.

This is a suit to set aside the will of Hermine Albers, deceased, on allegations of undue influence. The beneficiaries and proponents of the will are two sisters of Hermine. The contestants are the children of Hermine's half brother, who had predeceased her. The trial court sustained the will. The contestants appeal.

Hermine Albers and her two proponent sisters, were the children of Bernard Albers and his first wife. Hermine was the youngest of the three. When she was still an infant, her mother died. Her father later married a woman named Ida. Bernard and Ida had three sons, one of whom was the father of contestants. At Bernard's death, his will created a trust estate. It provided first for a life income to Ida. At her death the remaining estate was divided between the six children.

Bernard Albers died in 1908 when Hermine was 10 years old. Hermine continued to live with her stepmother, Ida, until about 1934 when she was stricken with a form of mental illness, from which she continued to periodically suffer for the remainder of her life. At that time she moved to the home of her older sister where she continued to live for about 12 years. Thereafter, she lived in an apartment except for periods of confinement in various hospitals for the treatment of her mental illness. Until Ida's death, in 1951, Ida supported Hermine. At that time Hermine received the inheritance provided by her father's will, which was substantial. This is the property that is the subject of the present proceeding.

Hermine's last will was dated February 5, 1964. She died on February 18, 1964. As before mentioned, the bulk of her estate was bequeathed to her two

sisters, and their children. It is not contended that Hermine was mentally incompetent to make a will. The charge is undue influence.

We decline to recite the details of the involved family relationships and other pro and con evidence contained in the voluminous record in this case. Contestants claim that Hermine's two sisters commenced to poison Hermine's mind against her stepmother and half brothers in 1934 and continued to do so until the time of Hermine's death in 1964. From the evidence the contestants attempt to draw inferences that for all of these 30 years the two sisters' only concern was to erect a barrier of hate between Hermine and her stepmother and half brothers and the latter's children. In 1948, Hermine executed a will which was substantially like the last will. This, contestants argue, demonstrates the long, unrelenting avarice on the part of the proponents' sisters.

Proponents, to the contrary, claimed that ther interest in their afflicted sister was governed entirely by benign motives and that the will was entirely the product of Hermine's uncontrolled intentions.

There is no dispute as to the governing law on the subject; its application to the particular parts of the evidence emphasized by the parties is at issue. Both sides cite and rely on *In re Reddaway's Estate,* 1958, 214 Or 410, 329 P2d 886. Contestants claim that because of the confidential relationship between Hermine and her two older sisters, the latter bears the burden of proof to sustain the will. We will assume this is true.

We view the case as one in which the trial judge's ability to observe and hear the witnesses gave him a particular advantage. The real crux of the case was to decide if for the many years in question, the pro-

ponents were filled with venom or altruism. Was it their purpose, as claimed by contestants, to poison Hermine's mind or were they motivated by sisterly affection for one whose lot in life required unusual care and attention?

Accordingly, the decision in this case is one in which the determination of the trial judge is peculiarly persuasive. To judge the character and motivation of these people by the printed page is a poor substitute for face to face encounter. The record supports the trial court's finding that the conduct of the proponents and the effect of their relationship to Hermine was not undue influence as defined and explained in *In re Reddaway's Estate, supra.*

There is nothing to indicate that either of the beneficiaries of the will had any part in its preparation, except the fact of prior intimate association with Hermine. The will was prepared and executed with independent advice of an attorney without any evident participation by the proponents. There is no evidence of any change in Hermine's attitude towards contestants in the months or years before the execution of the will. The 1948 will demonstrates that the 1964 will did not depart from an apparent long held plan by Hermine for the disposition of her estate. It was a natural and not an unjust gift.

Our study of this record and of the comprehensive briefs convinces us that the trial court correctly decided this case. The decree is affirmed.